**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| KALI DEARING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | Case No. CIV-24-1200-PRW |
| | ) | |
| BUSINESS IMAGING SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant Business Imaging Systems, Inc.'s ("BIS") Motion for Summary Judgment (Dkt. 45). This matter has been fully briefed and is ripe for decision. For the reasons that follow, BIS's Motion (Dkt. 45) is **GRANTED.**

***Background***

This employment discrimination action arises out of Plaintiff Kali Dearing's employment with BIS. Dearing was hired in June of 2023 and fired in November of 2023. Dearing alleges that BIS violated Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, as amended, during her employment and in terminating her employment. In short, she alleges she was discriminated against because she is a woman, was subjected to sexual harassment, was retaliated against for reporting the harassment, and was fired because of her child's disability.

After BIS moved for summary judgment, Dearing, who is pro se, filed a Response (Dkt. 46) that does not comply with Fed. R. Civ. P. 56 and Local Civil Rule 56.1, which

requires that "[t]he brief in opposition to a motion for summary judgment…shall begin with a section responding, *by correspondingly numbered paragraph,* to the facts that the movant contends are not in dispute and shall state any fact that is disputed." The rule further requires that each such factual contention be followed by "citation, with particularity, to any evidentiary material that the party presents in support of its position," in compliance with Fed. R. Civ. P. 56(c).

The Court later allowed Dearing to file an Amended Response to the Motion for Summary Judgment.[1] That Amended Response (Dkt. 58) also fails to comply with Fed. R. Civ. P. 56 and Local Civil Rule 56.1. These deficiencies prevent the Court from readily determining which numbered factual assertions Dearing disputes and which evidentiary materials she offers in support.

Accordingly, pursuant to Fed. R. Civ. P. 56(e), the Court treats as undisputed, for purposes of this motion, the material factual assertions in BIS's numbered statement that are properly supported by the cited evidentiary materials. This treatment does not extend to legal conclusions or counsel's argumentative characterizations. Nor does Dearing's noncompliance alone establish BIS's entitlement to judgment. The Court must still determine whether the supported facts warrant judgment as a matter of law and does so viewing those facts in the light most favorable to Dearing. And where the Court separately considers materials submitted with Dearing's Responses, it identifies those materials

---

[1] *See* Order (Dkt. 56).

below. Where the Court assumes alleged conduct for the sake of an alternative merits analysis, that assumption is not a finding that Dearing properly controverted BIS's statement.

**A. The Parties**

1. BIS is an Oklahoma corporation founded in 1986 that provides document and data management products, IT modernization, and related services using proprietary software. Its offices are in Edmond, Oklahoma.[2]

2. Daniel Rotelli is the majority owner of BIS and its CEO.[3] Timothy McMullin is BIS's Vice President of Sales and supervised Dearing.[4] Michael Rusnack is BIS's Human Resources Director.[5]

**B. Hiring, Attendance, and Company Equipment**

3. BIS hired Dearing on June 13, 2023, and terminated her employment on November 9, 2023. BIS claims that Dearing knew that she was an at-will employee,[6] but the deposition excerpts it cites for this proposition contain no mention of at-will employment.

---

[2] Mot. for Summ. J. (Dkt. 45), at 2; BIS Employee Handbook (Dkt. 58-3), at § 2.

[3] Rotelli Aff. (Dkt. 45-2), at ¶ 1.

[4] McMullin Dep. (Dkt. 58-2), at 4:7–12.

[5] Mot. for Summ. J. (Dkt. 45), at ¶¶ 4, 12; Dearing Dep. (Dkt. 45-1), at 46:11–21.

[6] Mot. for Summ. J. (Dkt. 45), at ¶ 1 (citing Dearing Dep. (Dkt. 45-1), at 13–14, 28).

4. When Dearing was hired, BIS had ended the company-wide remote-work policies implemented during the COVID-19 pandemic. BIS claims that Dearing knew that she was expected to be present in the office and initially worked there, but the affidavit and deposition excerpts it cites in support of that proposition don't go so far.[7] First, pages 105–08 of the deposition aren't included in Dkt. 45-1. Second, the remaining cited excerpts merely establish that Dearing was initially told she needed to be in the office at least one day a week and that Dearing initially came in to the office two days a week.

5. Dearing testified that no one expressly told her she could not work remotely, but she also described repeatedly requesting permission to do so and receiving permission for some remote work. Dearing knew that only a limited number of out-of-state employees were permitted to work remotely and that BIS was pushing its employees to end remote work and return to working in the office.[8]

6. BIS issues company computers to its employees. Use of company equipment protects proprietary information and enables BIS to track work product and employee productivity. Other employees were not permitted to use personal computers as their primary means of production, although occasional use out of necessity was permitted.[9]

---

[7] Mot. for Summ. J. (Dkt. 45), at ¶¶ 2–3 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 3; Dearing Dep. (Dkt. 45-1), at 10–11, 15–16, 55–58, 105–08, 116–17).

[8] *Id.* at ¶ 3 (citing Dearing Dep. (Dkt. 45-1), at 10–11, 15–16, 55–58, 105–08, 116–17).

[9] *Id.* at ¶ 6 (citing Rotelli Aff. (Dkt. 45-2), at ¶¶ 4–5).

7. Dearing preferred to use her personal Apple computer. BIS discussed her use of that computer with her and directed her to use the company-issued computer. Dearing nevertheless continued to use her personal computer.[10]

8. Dearing was informed that her production, as measured through use of her company computer, was inadequate and placed her last among company employees.[11]

### C. Workplace Incidents and Reporting

9. BIS claims that Dearing testified that its Human Resources Director accused her of lying and being manipulative.[12] Again, the deposition excerpt BIS cites in support of this claim doesn't fully support this claim. In that excerpt, Dearing testified that she was accused of being manipulative and told she "wasn't a good person." There is no mention of lying.

10. Dearing's sexual-harassment allegations concern two alleged statements McMullin made about watching lesbian pornography and an alleged sexual comment about a woman depicted in a photograph. BIS describes these allegations in its Motion and disputes that the statements were made,[13] but its statement of facts does not contain a specific factual denial that the statements were made or citation to record evidence

---

[10] *Id.* at ¶ 7 (citing Dearing Dep. (Dkt. 45-1), at 87-90; Rotelli Aff. (Dkt. 45-2), at ¶ 6).

[11] *Id*. at ¶ 8 (citing Dearing Dep. (Dkt. 45-1), at 175-79; Rotelli Aff. (Dkt. 45-2), at ¶ 7).

[12] *Id.* at ¶ 4 (citing Dearing Dep. (Dkt. 45-1), at 46).

[13] *Id.* at 3-4.

supporting its denial. BIS instead merely points to the fact the statements were never reported to HR and that Dearing could not remember the specific date they were made.[14] Dearing mentions these allegations in her Amended Response,[15] but identifies no supporting evidence in her discussion of the pornography-related allegations. In discussing the photograph allegation, she cites only McMullin's denial that he made the comment.[16] The allegations are recounted here to identify the conduct underlying Dearing's claims, not as findings that the statements occurred.

11. Dearing knew that BIS had a policy for reporting harassment. Before her termination, she did not report the alleged pornography-related comments to Human Resources or a supervisor.[17]

12. Dearing explained that she was uncomfortable complaining about the alleged sexual comments because she regarded people at the company as "not the best people." She nevertheless testified that she wanted to continue working for BIS.[18]

---

[14] *Id.* at ¶¶ 12-15.

[15] Am. Resp. (Dkt. 58), at 27-28.

[16] *Id.* at 20.

[17] Mot. for Summ. J. (Dkt. 45), at ¶ 12 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 18; Dearing Dep. (Dkt. 45-1), at 128-29, 185). While BIS quotes from Dearing's deposition in its Motion and cites pages 128-29 of that deposition in support, those deposition pages are not included in the exhibits BIS submitted in support of its Motion.

[18] *Id.* at ¶ 12 (citing Dearing Dep. (Dkt. 45-1), at 128-29, 185). Again, BIS quotes from and cites pages 128-29 of Dearing's deposition but does not include those pages in the exhibits submitted in support of its Motion.

13. Dearing did not report the alleged comments about the woman in the photograph.[19]

14. BIS claims that Dearing could not identify when the alleged pornography-related statements occurred more precisely than sometime between July and October 2023.[20] But the deposition excerpts BIS cites in support of that claim do not support it. Pages 114–17 of Dearing's deposition have nothing to do with the alleged sexual comments while page 185 contains no discussion of dates.

15. Dearing testified that she believed the alleged sexual comments were made to justify firing her for not using her company computer. She did not report that asserted connection before her termination.[21]

16. Dearing did not report the alleged antisemitic statement identified in her Complaint and did not allege that the statement affected her employment. BIS claims that Rotelli denied that BIS employees made such statements,[22] but paragraph 12 of the Rotelli Affidavit, which BIS cites in support of that claim, doesn't support that broader assertion. In it, Rotelli denies that *he* made any antisemitic statements and states he would not

[19] *Id.* at ¶ 13 (citing Rotelli Aff. (Dkt. 45-2), at ¶¶ 10-11, 13).

[20] *Id.* at ¶ 14 (citing Dearing Dep. (Dkt. 45-1), at 114-17, 185).

[21] *Id*. at ¶ 15 (citing Dearing Dep. (Dkt. 45-1), at 183-85).

[22] *Id*. at ¶ 16 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 12).

condone such statements by employees. He makes no denial regarding other BIS employees.

17. Dearing also alleged that employees possessed alcohol or firearms at work. She did not report those matters to Human Resources and did not allege that they affected her employment or termination.[23] The Court notes that Dearing does not mention that allegation in her Amended Response, and neither party cites any record evidence in support of the allegation.

18. Dearing first reported the alleged sexual comments after her termination, when she sought a severance payment.[24]

**D. Dearing's Son and Medical Leave**

19. BIS was unaware of Dearing's son's serious medical condition when she was hired. During her employment, BIS did not deny her permission to attend her son's medical appointments and approved leave for his planned surgery.[25]

20. At her deposition, Dearing testified:

> Q. Well, ma'am, are you contending that you were terminated because of your son's disability?
> A. No. But I…
> Q. Okay.
> A. -- I feel like they were trying, during the time, to say my son didn't have autism and I was crazy and over emotional for thinking that.

---

[23] *Id.* at ¶ 17 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 15).

[24] *Id.* at ¶ 18 (citing Dearing Dep. (Dkt. 45-1), at 198-200).

[25] *Id.* at ¶ 10 (citing Dearing Dep. (Dkt. 45-1), at 60-63; Rotelli Aff. (Dkt. 45-2), at ¶ 17).

Q. Ma'am, were you terminated because of your son's disability?
A. No. But -- I was not terminated because of my son's disability.[26]

**E. Performance and Termination**

21. BIS claims that Dearing was "largely inefficient at her job, that she did not appear to understand the parameters of her position, and that she could not demonstrate results or engagement from her social-media marketing work."[27]

22. BIS identified Dearing's work habits and production falling below company standards as the reason for her termination. Rotelli stated that neither Dearing's sex nor her son's disability played a role in that decision.[28]

23. Rotelli also stated that Dearing's separation had nothing to do with remote-versus-in-office work.[29]

24. Dearing's marketing-coordinator position was eliminated, and BIS did not hire another employee to replace her.[30]

---

[26] *Id.* at ¶ 11 (quoting Dearing Dep. (Dkt. 45-1), at 111-12).

[27] *Id.* at ¶ 19 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 19). BIS incorrectly cites paragraph 19 for these assertions. They are actually included in paragraph 8 of Rotelli's affidavit.

[28] *Id.* at ¶ 19 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 19).

[29] *Id.* at ¶ 5 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 16).

[30] *Id.* at ¶ 19 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 19).

25. BIS has hired both male and female employees for various positions within the company, and BIS denies taking sex into account when making hiring or firing decisions.[31]

***Legal Standard***

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, a court must view all facts and reasonable inferences in the light most favorable to the nonmovant.[32] Courts are not to weigh the evidence and determine the truth of the matter asserted, but instead are to determine only whether there is a genuine dispute for trial before the factfinder.[33] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[34] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue for either party.[35]

When, as here, the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary

---

[31] *Id*. at ¶ 20 (citing Rotelli Aff. (Dkt. 45-2), at ¶ 20). BIS repeatedly conflates the terms "gender" and "sex." The Court uses the term relevant here, which is "sex."

[32] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted).

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[34] *Id.* at 248.

[35] *Id.*

judgment and the burden of establishing that summary judgment is appropriate as a matter of law."[36] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[37] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, …[t]he non-moving party must set forth specific facts showing" a genuine issue for trial.[38]

## ***Discussion***

### I. Sex-based discriminatory termination, retaliatory termination, and associational disability termination

Title VII of the Civil Rights Act of 1964 prohibits sex discrimination in employment, as well as retaliation for protected conduct such as reporting instances of sexual harassment.[39] Title I of the ADA prohibits discriminating against an individual in employment "because of the known disability of an individual with whom [a] qualified individual is known to have a relationship or association."[40]

---

[36] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002*), as amended on denial of reh'g* (Jan. 23, 2003) (citation omitted).

[37] *Id.*

[38] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449-50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (citing *Anderson*, 477 U.S. at 248).

[39] 42 U.S.C. § 2000e-2(a); *id.* § 2000e-3(a).

[40] 42 U.S.C. § 12112(a), (b)(4).

When a plaintiff relies on circumstantial evidence of discrimination or retaliation, the familiar tripartite framework of *McDonnell Douglas Corp. v. Green*[41] governs. The burden starts with the plaintiff, who must present a prima facie case of discrimination or retaliation. The burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. If such a reason is provided, the burden shifts back to the plaintiff to demonstrate that the given reason is pretextual,[42] meaning it is so "incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief."[43]

Dearing alleges that she was fired from her job because of her sex, in retaliation for reporting instances of sexual harassment/misconduct, and because of her son's disability. Her reporting-based retaliation claim fails on the chronology established by the supported record: she first reported the alleged sexual comments after her termination. That subsequent report could not have motivated the earlier termination decision.

As to her son's disability, Dearing expressly testified that her son's disability did not cause her termination. The supported record also reflects that BIS permitted her to attend medical appointments and approved leave for the planned surgery. Dearing has not identified evidence permitting a reasonable inference that her son's disability determined

[41] 411 U.S. 792 (1973).

[42] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216-17 (10th Cir. 2013).

[43] *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (citation omitted).

the termination decision. Accordingly, she has not established a prima facie case of associational discriminatory termination.

That leaves Dearing's claim that BIS terminated her employment because of her sex. To establish a prima facie case, Dearing must present evidence that she belongs to a protected class, suffered an adverse employment action, and that the action occurred under circumstances giving rise to an inference of discrimination.[44] Evidence that an employer treated a similarly situated employee outside the protected class more favorably can support that inference, but the inquiry is not limited to comparative evidence.[45]

Dearing satisfies the first two requirements: she is a woman, and BIS terminated her employment. The question is whether the circumstances support an inference that her sex played a role in that decision. The supported facts establish that BIS eliminated Dearing's marketing-coordinator position and did not hire another employee to replace her. Dearing has not identified a similarly situated male employee who received more favorable treatment under comparable circumstances. Neither point independently forecloses a discrimination claim, but neither supplies the missing inference here.

The workplace disputes described in the supported factual record likewise do not, without more, establish a connection between Dearing's sex and her termination. Disagreements over attendance, computer use, and productivity are not themselves

---

[44] *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

[45] *Id.* at 800-01.

evidence that BIS treated Dearing adversely because she is a woman. Nor does the Human Resources Director's accusation that Dearing was manipulative, without evidence connecting that accusation to her sex, supply such an inference.

Dearing's allegations that her supervisor conditioned employment benefits on sexual conduct potentially bear on whether her termination occurred under circumstances supporting an inference of discrimination. The Court therefore assumes, without deciding, that Dearing has established a prima facie case and proceeds to BIS's explanation and Dearing's evidence of pretext. The evidentiary support for the alleged demands and their asserted connection to Dearing's termination are addressed in Section II.

BIS's proffered legitimate, non-discriminatory reason for firing Dearing is that "her work habits and production did not meet company expectations."[46] Rotelli further stated that she did not appear to understand her job requirements and "was unable to demonstrate any meaningful social media engagement with any marketing work done by her."[47] Although BIS's brief also invokes Dearing attendance, Rotelli expressly disclaimed remote-versus-in-office work as a reason for separation. The Court evaluates the supported performance explanation rather than adopting attendance as an additional termination rationale.

---

[46] Rotelli Aff. (Dkt. 45-2), at ¶ 19.

[47] *Id.* at ¶ 8.

Dearing hasn't offered evidence from which a reasonable factfinder could conclude that these reasons are pretextual. In arguing pretext, Dearing relies on (1) BIS's admission that she was never formally disciplined during her employment; (2) BIS's admission that she received supportive feedback regarding her job performance; and (3) a Facebook post from McMullin stating: "Great people, great products, great place to work. I've never worked with smarter, more creative people."

Those circumstances do not, without more, demonstrate pretext. Although Dearing was never formally disciplined, McMullin testified that she was "counseled verbally."[48] BIS also informed Dearing that her recorded activity on the company-issued computer was inadequate and ranked last among its employees. Dearing nevertheless continued using her personal computer despite instructions to use company-issued equipment.[49] And the mere fact that she received some "supportive" feedback, or that her boss posted a compliment on social media about his team, does not provide a basis upon which a reasonable factfinder could conclude that BIS's proffered reasons for firing Dearing are pretextual.

## II. Quid pro quo/tangible employment action harassment

Dearing also contends that her supervisor conditioned a raise, promotion, or continued employment on her watching lesbian pornography and proving that she had done so. Although commonly described as "quid pro quo" harassment, the relevant distinction

---

[48] McMullin Dep. (Dkt. 58-2), at 7:23-24.

[49] Mot. for Summ. J. (Dkt. 45), at ¶¶ 7-8.

is whether the alleged sexual demand culminated in a tangible employment action.[50] An unfulfilled threat is evaluated under the hostile-work-environment framework; a demand carried out through an employment decision presents a tangible-employment-action theory.[51]

To survive summary judgment on the latter theory, Dearing must identify evidence from which a reasonable jury could find that an employment benefit was conditioned on submission to sexual conduct and that an adverse employment consequence resulted from her refusal.[52] Termination is a tangible employment action, but its occurrence does not dispense with the requirement of a connection to the alleged sexual demand.[53]

The Court does not resolve this claim by accepting BIS's denial that the statements occurred. As explained above, BIS's numbered statement does not support that denial with a specific citation to record evidence. Moreover, BIS itself cites portions of Dearing's deposition referring to the alleged comments. Dearing's failure to repeat those citations in her response does not transform an unsupported denial into an established fact. The Court considers the cited evidentiary materials in determining whether BIS has demonstrated entitlement to judgment.

---

[50] *Burlington Indus.,, Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998).

[51] *Id.*

[52] *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1059-60 (10th Cir. 2009).

[53] *Id.*

For purposes of this analysis, the Court assumes that McMullin made the alleged statements linking a raise or promotion to Dearing's watching pornography and proving it to Rotelli. Such statements concern a purported sexual condition on an employment benefit, not merely a comment about another person's appearance. Nevertheless, Dearing has not identified evidence that BIS actually denied her a raise or promotion because she declined that condition. The statements alone therefore do not establish that the alleged condition was implemented through a compensation or promotion decision.

Dearing's termination requires separate consideration. Although her response asserts that continued employment was conditioned on compliance, she has not identified testimony or other evidence establishing that asserted demand. The cited testimony summarized in Background ¶ 15 reflects her belief that the comments were intended to justify firing her over company-computer use; it does not, without supporting facts, establish that BIS terminated her because she refused sexual conduct. Nor has Dearing identified other evidence connecting her refusal to the termination decision. The identified evidence therefore does not permit a reasonable inference that BIS implemented the alleged sexual condition through its termination decision.

The absence of a pretermination harassment report is not the basis for this conclusion. If supervisory harassment culminates in a tangible employment action, the employer cannot avoid liability through the affirmative defense ordinarily available when

no such action occurs.[54] Here, the deficiency is the absence of evidence connecting an actual employment consequence to Dearing's refusal—not her failure to report the alleged comments.

Accordingly, BIS is entitled to summary judgment on Dearing's quid pro quo or tangible-employment-action theory. Whether the alleged statements otherwise support a hostile-work-environment claim is addressed below.

**III. Hostile work environment**

Title VII of the Civil Rights Act prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive," i.e., hostile, "working environment."[55] For a sexual harassment/hostile work environment claim, the plaintiff must show that: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."[56] To establish severe or pervasive harassment, a plaintiff must present evidence "showing that the work environment 'is both subjectively *and* objectively hostile

---

[54] *Ellerth*, 524 U.S. at 765.

[55] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quotation omitted).

[56] *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005).

or abusive.'"[57] This is a totality-of-the-circumstances test. Courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[58] Additionally, severity and pervasiveness are "to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once…, while a relentless pattern of lesser harassment…over a long period of time" is also unlawful.[59]

To show severe or pervasive sexual harassment, Dearing points to (1) a comment allegedly made by her supervisor that she could keep her job if she watched lesbian pornography; (2) a later comment that she could receive a raise or promotion if she "proved" to BIS's CEO that she watched lesbian pornography; (3) other comments made by her direct supervisor in regard to a photograph of a former employee's wife displayed in his office, including a comment that he would "[do] things…to her"; and (4) an incident in which the company's HR director called her manipulative, which prompted her to cry. She has also provided screenshots of text messages purportedly sent between Rotelli and

[57] *Brown v. LaFerry's LP Gas Co., Inc.*, 708 Fed. App'x 518, 520 (10th Cir. 2017) (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015)) (emphasis in original). The Court cites unpublished decisions of the Tenth Circuit for their persuasive value, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

[58] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[59] *Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

another female employee, long after Dearing's termination, where Rotelli uses off-color sexual language.

Dearing does not identify supporting evidence in the relevant portions of her response. That omission does not establish that the alleged comments were never made. As explained above, BIS's *denial* is also not supported by the cited materials, and BIS itself submitted deposition excerpts referring to some of the alleged comments. The Court therefore evaluates the testimony contained in those excerpts and, for the alternative analysis below, assumes the alleged statements occurred.

Assuming the alleged statements occurred, the Court considers the alleged conduct collectively and in context. And the alleged statements linking continued employment or advancement to watching pornography must be evaluated for their severity in light of McMullin's supervisory role and their asserted employment consequences, rather than treated solely as isolated remarks. Dearing identifies no physical threat or interference with her work performance and describes a limited number of infrequent incidents. Those considerations inform the totality-of-the-circumstances analysis, but none is independently dispositive. And the incident with the HR director in which he called her "manipulative" is not connected to Dearing's sex by the identified record evidence. The alleged comment about the woman depicted in the photograph forms part of the workplace conduct Dearing describes. By contrast, the later text messages were exchanged after Dearing's employment ended and were not communications she experienced during that employment. The Court

does not count those messages as incidents contributing to her contemporaneous working environment.

So what remains are a few off-color comments that Dearing does not link to any actual employment consequences, and she admits that she never reported them until after she was fired. Nor does Dearing identify any interference with her work performance as a result of the comments or any other adverse effects during her employment. Remember, by her own account, she primarily worked remotely rather than in the office where the alleged comments occurred. And the alleged "watch lesbian pornography" condition, by Dearing's own account, wasn't an actual condition of employment, but rather a pretext for firing her for using her personal computer. It is difficult to make sense of that account, but it is nonetheless Dearing's account, and it defeats any reasonable inference that the statement placed an actual condition on her employment.

No reasonable factfinder could conclude that this handful of comments amounts to severe or pervasive harassment or that the harassment altered a term, condition, or privilege of Dearing's employment and created an abusive working environment.

***Conclusion***

Accordingly, the Motion for Summary Judgment (Dkt. 45) is **GRANTED**. All other pending motions in this case are **DENIED AS MOOT**. A separate judgment will enter.

**IT IS SO ORDERED** this 28th day of September 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE